# UNITED STATES DISTRICT COURT
## for the
## District of Colorado

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | Case No. 24-sw-1263-MEH |
| 2019 Grey Dodge Charger Vin # ) | |
| 2C3CDXGJ3KH53097 with Temporary Tag: ) | |
| 5346376 | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit located in the State and District of Colorado, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841 | Possession with intent to distribute controlled substances. |
| 18 U.S.C. § 922(g) | Felon in possession of a firearm. |
| 18 U.S.C. § 924(c) | Use of a firearm during a drug trafficking crime |

The application is based on these facts:

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Bryan Huot*
*Applicant's signature*

SA Bryan Huot, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 09/16/2024

*[Signature: Michael E. Hegarty]*
*Judge's signature*

City and state: Denver, CO

Michael E. Hegarty
United States Magistrate Judge

# ATTACHMENT A
## DESCRIPTION OF VEHICLE TO BE SEARCHED

The 2019 Grey Dodge Charger Vin # 2C3CDXGJ3KH53097 with Temporary Tag: 5346376 is currently located at the FBI Denver Field Office on East 36th Avenue, Denver, Colorado. The grey Dodge Charger has aftermarket tires and chrome rims installed on the vehicle with dark tinted windows. This vehicle is undergoing the forfeiture process with United States Marshals Service in May 2024, due to the above-mentioned investigation with findings indicative of a drug trafficking crime through a Colorado State issue search warrant. See picture below for identification of the vehicle.



**Picture of David WATKIN's Vehicle (vehicle to be searched) prior to the execution of the Colorado State Search Warrant after his arrest.**

**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

The following items, located in the vehicle that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of 21 U.S.C. § 841 (possession with intent to distribute controlled substances), 18 U.S.C. § 924(c) (use of a firearm during a drug trafficking crime). That this search is narrow in scope but will be extensive based on the information that your Affiant has received regarding the admissions WATKIN'S made while incarcerated. Therefore, Your Affiant, and other law enforcement officials your affiant deems qualified, will conduct a thorough and in-depth search of this vehicle to locate a potential aftermarket trap/compartment installed interior or exterior of the vehicle.

1. Fentanyl pills.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Bryan Huot, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state under penalty of perjury that the following is true to the best of my information, knowledge, and belief.

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the FBI and have been since 2011. I am currently assigned to the Denver Division, Colorado Springs Resident Agency. I investigate crimes of violence, criminal violations relating to firearms violations, narcotics, gangs, public corruption, and money laundering. I have received basic federal law enforcement training, including training at the FBI Academy, as well as other specialized federal law enforcement training. I have received formal training and have experience in gang investigations, have conducted numerous investigations and have charged racketeering crimes. I have used various investigative techniques, including but not limited to, physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, physical searches, mail covers and electronic examinations of evidence. I have worked alongside and consulted with many law enforcement officials and other professionals experienced in racketeering investigations. I am familiar with the use of electronic evidence, such as that obtained from cellular phones and computers, in my investigations.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922 (g)(1), 18 U.S.C. § 924(c), and 21 U.S.C. § 846 have been committed by David Wayne WATKINS. There is also probable cause to believe that the information described in the respective Attachment B will constitute evidence of these criminal violations and will lead to the identification of WATKINS being engaged in the commission of these offenses.

1

3. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PURPOSE OF THIS AFFIDAVIT

4. Based on my training, experience, and facts set forth in this affidavit, I submit there is probable cause to believe that David Wayne WATKINS, has committed offenses related to 21 U.S.C. § 841 (possession with intent to distribute controlled substances), 21 U.S.C. § 846 (conspiracy to distribute a controlled substance), 18 U.S.C. § 922(g) (felon in possession of a firearm),18 U.S.C. § 924(c) (use of a firearm during a drug trafficking crime).

5. This single affidavit supports applications for a search warrant to search the following vehicle, collectively referred to as the TARGET VEHICLE:

    a. 2019 Grey Dodge Charger Vin # 2C3CDXGJ3KH53097 with Temporary Tag: 5346376 **(Target Vehicle).**

6. As part of this affidavit, a significant portion of drug related criminal history and previous investigations are included by way of background for the court. The historical information, including previous criminal cases, is not meant to be a sole determining factor of probable cause.

7. The affiant has conducted an investigation into WATKINS' employment history and has determined that WATKINS does not have a record of legitimate employment.

8. Probable cause for the requested warrant has not dissipated over time, and the condition of the Target Vehicle has not changed since its seizure by law enforcement. Since that time, it has been in the exclusive custody of law enforcement and no one other than law enforcement has had access to the Target vehicle. More specifically, the Target vehicle was sealed with evidence tape placed around all openings and signed by law enforcement officials when it was towed from Pueblo Police Department (PPD) and into the custody of the United States Marshal Service. Furthermore, once Your Affiant was alerted to the possibility that a large quantity of fentanyl pills still remains in the Target Vehicle, it was towed into the

2

custody of the FBI where evidence tape was then placed around all of the openings of the vehicle once again. Therefore, it is reasonable to believe that no one other than law enforcement has had access to this vehicle from the time WATKINS was arrested by PPD, and furthermore, the Target Vehicle is in substantially the same condition it was in at the time of its seizure. Furthermore, items further outlined in Attachment B are not all items that are consumable or would degrade over time if stored in the manner described by WATKINS.

9. This affidavit includes details of the following information, and the results of certain investigative techniques:

   a. Identification of David Wayne WATKINS criminal history;
   b. Historical Pueblo Police Department Investigation and arrest of WATKINS;
   c. A summary of evidence related to WATKINS vehicle and the motel where he was residing;
   d. The sale of methamphetamine, fentanyl, and a firearm by WATKINS;
   e. Recent information received by a cellmate of WATKINS detailing admissions WATKINS recently made about the contents of the Target Vehicle

10. The below affidavit will demonstrate that WATKINS has been distributing controlled substances for years. He is estimated to be trafficking more than 50,000 fentanyl pills each week. The large volume of drug distribution is consistent with the bulk cash that was on WATKINS' possession of large amounts of United States currency when he was arrested. At the time of his arrest, officers with the Pueblo Police Department seized approximately $53,000, as detailed below.

11. Based on the information set forth below, I assert there is probable cause to believe that, contained within the TARGET VEHICLE there is proof that constitutes evidence of the commission of criminal offenses; contraband, the fruits of crimes, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing criminal offenses, namely, violations of 21 U.S.C. § 841 (possession with intent to distribute controlled substances), 21 U.S.C.

§ 846 (conspiracy to distribute a controlled substance), 18 U.S.C. § 924(c) (use of a firearm during a drug trafficking crime), hereinafter the "OFFENSES".

12.     I respectfully request the issuance of a warrant to search each the TARGET VEHICLE described in the respective Attachment A for such evidence of the commission of criminal offenses; contraband, the fruits of crimes, and things otherwise criminally possessed; and property designed or intended for use, or which is or has been used as the means of committing criminal offenses, namely, violations of the OFFENSES described more particularly in the respective Attachment B.

## PROBABLE CAUSE

### Summary of Investigation

13.     My investigation has revealed that WATKINS violated 21 U.S.C. § 841 (possession with intent to distribute controlled substances), 21 U.S.C., 18 U.S.C. § 922(g) (felon in possession of a firearm), 18 U.S.C. § 924(c) (use of a firearm during a drug trafficking crime), hereinafter the "OFFENSES".

14.     After his arrest, state search warrants were obtained for WATKINS' vehicle and hotel room where several firearms, drugs, and cash were seized. WATKINS was advised of his Miranda rights and agreed to speak with law enforcement officers without the presence of an attorney. During that conversation he admitted that he was aware of the guns in the vehicle and on his person.

15.     On the date of his arrest, WATKINS was a prohibited person, in that he had six previous felony convictions.

### DAVID WAYNE WATKIN'S CRIMINAL HISTORY

16.     I have reviewed a criminal history for David Wayne WATKINS, date of birth 12/06/1978, and learned the following information related to his six prior felony convictions:

   a) In Port Arthur, Texas, WATKINS pleaded guilty to Robbery on May 05, 2001, a second-degree felony, with an unknown sentence.

4

b) In Jefferson County, Texas, WATKINS pleaded guilty to MAN DEL CS PG 1<1G on February 2, 2003, a second-degree felony, and was sentenced to five years of probation on February 2, 2003.

c) In Beaumont, Texas, WATKINS pleaded guilty to MAN DEL CS PG 1<1G on August 13, 2003, a state jail felony, and was sentenced to (53) months' probation.

d) In Beaumont, Texas, WATKINS pleaded guilty to MAN/DEL/SELL/POSS CONTROLLED SUBSTANCE, a third-degree felony on, December 1, 2008, and was sentenced to three years in jail.

e) In Port Arthur, Texas, WATKINS pleaded guilty to ASSAULT FAMILY/ HOUSEHOLD MEMBER PREV CONV IAT, a third-degree felony, on November 30, 2013, and was sentenced to two years in jail.

f) In Beaumont, Texas WATKINS pleaded guilty to ASSAULT FAM/HOUSE MEM IMPEDE BREATH/CIRCULAT, and third-degree felony on, December 6, 2017, and was sentenced to six months in jail.

17. On December 15, 2023, at approximately 1710 hours, Detective M. Juliano with the Pueblo Police Department (PPD), responded to the 3414 N. Elizabeth St., which is in the City of Pueblo, on an attempt to locate a wanted party (not WATKINS). Detective Castro (PPD) was performing mobile surveillance on a vehicle that possibly contained the wanted party involved with his investigation. This party is not named because the investigation into him is ongoing.

18. Upon arrival, Detective Juliano observed a grey Dodge Charger in the parking lot of Wing Stop, located at 3414 N. Elizabeth St. Pueblo, CO 81008. He assisted with surveillance on his vehicle. The Dodge Charger had Colorado Temp Tag 5346376 attached to it. This plate was fictitious and listed to a white 2003 GMC van. Through my training and experience I know criminals will often switch plates on

5

stolen vehicles and vehicles that belong to them in order to disassociate themselves from criminal activity and to otherwise make it difficult for law enforcement to track their criminal activity.

19. While performing surveillance on the Dodge Charger Detective Juliano was parked across the street from it. He was able to capture photographs of the driver. This male was wearing a white Oakland Raiders football jersey, black sweatpants, and a white hat. This male also had distinct dreadlocks. Detective Juliano positively recognized the male as David Wayne WATKINS. Detective Juliano knew it was WATKINS due to previous law enforcement incidents where WATKINS was present and through confidential human sources identifying WATKINS in a photo lineup. There was a female with WATKINS who was later identified as Kenzie CARTMELL (1/26/96). CARTMELL walked into a store north of the Wing Stop and WATKINS stood outside. WATKINS had a black handbag on his person and got back into the Dodge Charger and backed it up in front of the store CARTMELL had entered. Detective Juliano contacted a marked patrol unit and requested their assistance with a traffic stop to aid into the investigation to determine whether the Dodge Charger was stolen. The marked patrol unit responded to the area and other unmarked units continued surveillance on the Dodge Charger. A short time later the Dodge Charger left and drove southbound on N. Elizabeth St. Detective Juliano continued constant mobile surveillance on the vehicle. The Dodge Charger continued south on N. Elizabeth St., east on W. 30th St., south on N. Greenwood St., east on W. 29th St., and into the parking lot of 414 W. 29th St, Pueblo, Colorado, which is the location of a USA Motel.

20. As WATKINS was pulling into the parking lot, Officer Claussen and Pickerill initiated a traffic stop on his vehicle. They were in a fully marked patrol unit and had their emergency lights activated. WATKINS pulled into a spot facing eastbound, exited the driver's seat, and fled northbound on foot. WATKINS appeared to leave the vehicle in drive because it continued moving forward after he fled and collided with a parking barrier in front of the vehicle.

21.     Detective Juliano was just north of WATKINS in an unmarked vehicle. Detective Juliano exited his vehicle and started to run toward WATKINS. WATKINS quickly surrendered and was taken into custody.

22.     As WATKINS was being placed in handcuffs Detective Diaz asked if he was armed. WATKINS informed Detective Diaz he had a gun in his back. Detective Diaz patted WATKINS down and located a Glock 19 9mm pistol (SN# ADBM727) tucked into his waistband inside a holster. This pistol was concealed underneath his jersey. This pistol did not have a round in the chamber, but had a magazine inserted into it with 15 live 9mm rounds. This pistol was later cleared and came back stolen out of the Fort Peck Assiniboine and Sioux Tribes. It was reported stolen on 11/21/22.

23.     Detective Juliano ran past WATKINS to the Dodge Charger. The driver's door was left open, and he could see CARTMELL exiting the front passenger seat to a patrol officer giving her commands. In plain view inside the Dodge Charger, Detective Juliano could see several items. In the driver door panel, Juliano observed several suspected AR-15 magazines loaded with ammunition, a suspected methamphetamine pipe in the driver door panel, and another Glock pistol on the driver's seat with a magazine inserted into it. Also outside the driver's door was a blue cell phone. Detective Juliano contacted CARTMELL in the back of a marked patrol unit and got her identifying information. Juliano asked who she was with, and she stated "D" and that he was a friend. CARTMELL also stated they were in room # 16.

24.     Detective Juliano contacted WATKINS and informed WATKINS he wanted to talk with him but was going to do it at the Pueblo Police Department for more privacy and so other people would not see him talking to law enforcement.  In WATKINS' possession was a black handbag, a large bundle of United States currency held together by a rubber band, and wallet with a chain connected to it. The wallet with chain on it was connected to WATKINS' pants at the time of the contact leading to his arrest. The wallet was full of cash which was also contained in bundles secured with rubber bands. It appeared the bundles were comprised $100.00 bills. The leather wallet with chain attached to it also contained six bundles of cash that were the following amounts: $5,200.00, $39.00, $10,000.00, $10,000.00, $10,000.00, and

7

$10,000.00. The total amount of cash seized from Watkins was $52,817.00. Detective Juliano secured the currency in his vehicle. WATKINS and CARTMELL were both cleared through dispatch. Dispatch stated WATKINS was clear, but CARTMELL had active warrants for her arrest. WATKINS and CARTMELL were both transported to Pueblo County Jail.

25. The Dodge Charger's VIN's number in the windshield was covered by a piece of paper and the VIN number on the driver door panel was covered via piece of metal. This Dodge Charger was towed from the scene via Discount Towing to the Pueblo Police Department. Detective Diaz followed the tow company to the Pueblo Police Department, and it was placed in the secured annex. The vehicle was secured with evidence tape.

**Interview of WATKINS**

26. Detective Juliano contacted WATKINS on the third floor of the Pueblo Police Department inside interview room # 3301 with Detective Castro at approximately 1745 hours. Detective Juliano explained to WATKINS that he wanted to talk with him, and he was part of an investigation he was conducting. Detective Juliano explained to WATKINS that he had to advise him of his Miranda rights first. Detective Juliano did this using a Pueblo Police Department Adult Miranda Advisement Form. Juliano read verbatim from the form. WATKINS initialed the form on several lines acknowledging he understood each of his rights and signed the form agreeing to speak without the presence of an attorney. WATKINS was not made any promises during this interview. Below is a summary of what he told Detective Juliano. This is not intended to be verbatim.

27. WATKINS confirmed his phone number is 719-664-6049. Currently WATKINS does not have a job. WATKINS is originally from Texas. WATKINS is currently staying at the USA Motel in room # 16 and it is rented by him. WATKINS used to be a 5 Deuce Hoover Crip gang member and goes by the nickname of "D".

28. WATKINS recently bought the Dodge Charger he was driving for $40,000.00 and paid cash. It was purchased in Denver, CO. WATKINS did not have a chance to register it, so he was using a

8

fake temp tag he got from his friend. Detective Juliano brought up how the VIN# was covered and WATKINS explained that is how he purchased it. WATKINS claimed he had around $35,000.00 cash on his person. Detective Juliano asked WATKINS about the pistol he had on him and WATKINS stated it was for protection.

29. WATKINS admitted to dealing narcotics and acknowledged the pistol was used for protection of being robbed of his narcotics and the cash he makes from selling them. WATKINS acknowledged the cash on his person was from selling narcotics. Through my training and experience it is common for drug dealers to carry firearms on their person for protection of being robbed of their illegal narcotics and proceeds from selling them.

30. WATKINS acknowledge he is a previously convicted felon for assault and distribution of cocaine and cannot legally possess firearms. Watkins also confirmed he did not have a concealed carry license. Detective Juliano asked WATKINS where he got his pistol from since he cannot legally buy one. WATKINS claimed he bought three pistols about a week ago from a gun in the projects and paid $250.00 per pistol. WATKINS admitted the pistol on the driver's seat belonged to him. WATKINS also stated the AR-15 magazines belonged to him and there was an AR-15 in the hotel room that belonged to him. He has had this AR-15 for three years.

31. WATKINS confirmed to shooting the AR-15 before, but not the pistols he recently purchased. Detective Juliano asked WATKINS about the suspected methamphetamine pipe in the driver door, and he stated it belonged to him and uses methamphetamine sometimes. Detective Juliano asked Watkins if there were going to be narcotics in the vehicle or in the hotel room. WATKINS claimed there may be drugs in the center console of the Dodge Charger and was unsure if there would be narcotics in the hotel room.

32. Detective Juliano asked WATKINS for consent to search the Dodge Charger, hotel room, and his cell phones. WATKINS agreed to this and would later sign search waivers for all these locations. WATKINS confirmed the flip phone and blue phone on the ground outside the driver door belonged to

9

him. WATKINS provided the code for the flip phone as "2257". Detective Juliano spoke with WATKINS further about selling narcotics and he confirmed he sold an ounce of methamphetamine for $150.00, a 100 pack of fentanyl pills for $250.00, an 8-ball of methamphetamine for $40.00, and a 1,000 fentanyl pills (referred to by the slang term "boat") for $1,500-1,600.00. Watkins claimed he made around $1,000.00-$1,500.00 a week selling narcotics. WATKINS mentioned he was smart with his money, saved it, and invested in crypto currency. WATKINS tried to deny selling large amounts of narcotics.

<strong><u>Search Warrant Execution of the Black Dodge Charger "Target Vehicle"</u></strong>

33. On December 15, 2023, Detective Juliano authored and obtained a state search warrant for the Dodge Charger, which was executed as described below.

34. At the time that warrant was executed on the vehicle, law enforcement did not have any information about hidden compartments, or "traps" utilized for hiding controlled substances. Consequently, the search did not involve removal of panels or any alteration of the original compartments of the vehicle. Based on my training and experience, such "traps" can be highly sophisticated and locating them involves removal of panels and other thorough methods not used in the December 15, 2023.

35. The search warrant noted in paragraph 33 was executed on December 15, 2023 in the limited manner described in paragraph 34. During the search of the vehicle, investigators found and seized the following items:

   a) A Glock 26 9mm (Sn # ADFM077). This pistol had a magazine inserted into it with live ammunition, but no round in the chamber. There were (14) live 9mm rounds in the magazine.

   b) Two AR-15 magazines that contained live ammunition inside of them. One magazine was double sided and contained 10 live .223 rounds and seven live .223 rounds. The second magazine had (38) live .223 mm rounds inside of it.

   c) A glass "bong" with white residue inside of it. Through my training and experience I recognized this pipe as one used to smoke illegal narcotics such as methamphetamine.

d) Numerous clear baggies. Through my training and experience I recognized these baggies as ones to sell illegal narcotics.

e) A box of blazer 9mm ammunition containing (44 rounds)

f) A box of .22 Long Rifle ammunition (100 rounds)

g) A 9mm extended magazine with (18) live rounds of ammunition inside of it.

h) A red plastic container with burnt tin foil and glass pipes inside. Through my training and experience I recognized these items as ones used to smoke illegal narcotics such a methamphetamine and fentanyl.

i) Also, inside of the red container (located on the front passenger floorboard) was a clear baggie containing, blue circular pills (Approx. 40.9 grams) with the imprint's "M" and "30" on them, two clear baggies containing suspected marijuana, and 1 clear baggie containing hard crystal-like substance. Through my training and experience I recognized the blue pills as suspected fentanyl and clear crystal-like substance as methamphetamine. Additionally, through my training and experience I know the amount on fentanyl found inside of the vehicle were/are above user amounts and are indicative of distribution amounts. WATKINS admitted during his interview that he was a drug dealer at the time of his arrest.

j) A brown shoulder holster with two 9mm magazines inside of them. These magazines contained a combined total of 29 live 9mm rounds.

k) Two 9mm magazine drums. One magazine drum contained 13 rounds of live 9mm ammunition and the other contained 29 rounds of live 9mm ammunition. Inside a blue Walmart bag on the rear driver seat, Detective Juliano located a Walmart bag that contained a box of 9mm Aguila ammunition. This contained 38 rounds.

### Search Warrant Execution of USA Motel Room # 16

36. On December 15, 2023, Detective Juliano authored and obtained a state search warrant for USA Motel Room # 16 located at 414 W. 29th St Pueblo, Colorado.

37.     Inside a folder stuff between the driver seat and center console contained a title for the vehicle and another fictitious temp tag. This temp tag displayed 5346376. The VIN# from the title of the vehicle displayed 2C3CDXGJ3KH53097. This registered on a 2019 grey Dodge Charger out of Denver, CO to a Davey Barela. On the base of the windshield near the engine compartment was a spent 9mm shell casing. Through my training and experience it is common for spent shell casings to get lodged in this location when people are shooting from a moving vehicle. Detective Juliano located another fictitious temp tag stuffed between the front passenger seat and center console. The temp tag displayed Colorado 5864875.

38.     The search warrant was executed on the same day. During the search of the motel, investigators found and seized the following items:

  a) Next to a bed was an Anderson Arms AR-15 rifle (SN# 17079589). This rifle had a live round in the chamber and a live magazine inserted into it with 20 additional live rounds. This AR-15 was cleared and came back stolen out of the Pueblo Police Department. In addition, it was later confirmed to be an illegal weapon. The barrel length of this AR-15 was 9 ½ inches. The minimum legal length of an AR-15 is 16 inches.

  b) Another Glock 19 9mm pistol (SN# BVCA999) was located inside a dresser. This pistol did not have a magazine inserted into it and there was no round in the chamber. This pistol came back clear through dispatch.

  c) The following items:

     - Magazine drum in black duffle bag with several live 9mm rounds

     - Pistol magazine in black duffle bag

     - Rifle magazine in black bag on dresser

     - Red dot firearm optic on dresser

     - Digital scale on nightstand

     - Baggies on nightstand

     - Two suspected fentanyl pills on nightstand

- Various loose ammunition in bag inside black duffle bag

- A tactical/stab vest

### Weapons Traveled in Interstate Commerce

39.     On 12/18/2023, your Affiant communicated with Special Agent Jeremey Allen from the ATF regarding the weapons associated with WATKINS' arrest as stated above. SA Allen is a certified nexus examiner. SA Allen along with Your Affiant have received the certified nexus reports from the weapons recovered during WATKINS' arrest, search of his vehicle, search of his hotel room, and all weapons were identified to have travelled in interstate commerce.

### WATKINS' Federal Indictment

40.     On February 20, 2024, in the District of Colorado, the grand jury returned an indictment against WATKINS for the following charges:

| | |
|---|---|
| 21 U.S.C. § 841 | Possession with intent to distribute 40 grams and more (fentanyl). |
| 18 U.S.C. § 922(g) | Felon in possession of a firearm. |
| 18 U.S.C. § 924(c) 26 | Use of a firearm during a drug trafficking crime. |
| U.S.C. § 5861(d) | Possession of a firearm not registered to him in the National Firearms Registration. |

41.     On February 23, 2024, Your Affiant, FBI Special Agent Sean Cave, and FBI TFO Marcus Juliano placed WATKINS into federal custody and transported him from Pueblo, Colorado to the United States Marshal Service in Denver, Colorado for his initial appearance. During this transport, immediately upon placing WATKINS in the transport vehicle, WATKINS asked and requested if he was going to get his vehicle returned to him. WATKINS seemed particularly concerned about the vehicle's whereabouts.

### WATKINS' Admission in Jail to other Inmate

42.     On July 21, 2024, Your Affiant obtained information originating from an inmate who is co-located at the same detention facility with WATKINS. that the inmate stated that WATKINS admitted

13

to him that he ran an elaborate drug distribution operation in Pueblo, Colorado where he was dealing upwards to 50,000 fentanyl pills per day.

43. WATKINS also explained to this inmate that he had an additional 50,000 fentanyl pills still located in the vehicle that were not located and seized by law enforcement during the initial search.

44. Additionally, WATKINS admitted that his operation involved his wife Kenzie, who is responsible for dealing narcotics on the south side (of Pueblo), and a women named Cristal, who handles distribution of controlled substances on the north side (of Pueblo). WATKINS explained that the proceeds of his operation are shared with his sister Leshia Champs, who is an attorney in Houston, Texas.

45. Your Affiant conducted an investigation in an effort to corroborate the non-public information provided by the inmate. Your Affiant conducted an open-source check on Leshia Champs and confirmed that she owns a private practice law firm "Champs Law Firm" on 1004 Prairie Street, Houston Texas, 77002. Your Affiant listened to recorded telephone calls from jail between Leisha Champs and WATKINS while WATKINS has been incarcerated. Lastly, Your Affiant has viewed monetary transactions from the previous six months of approximately $1400 from Leisha Champs to WATKINS' jail account. WATKINS also has Leisha Champs listed as one of his authorized contacts while incarcerated.

46. Your affiant is unaware of any open-source method the cooperating inmate could have used to learn of the familial relationship between WATKINS and Ms. Champs, or the fact of their ongoing close relationship.

47. Your Affiant has purposely left out the name of this inmate in order to protect the identity of this individual. Through my training and experience it is common for these individual to be harmed while incarcerated if identity is not protected.

48. Because the Target Vehicle has been maintained securely in the same condition it was in when originally seized, the passage of time has not diminished the likelihood of controlled substances hidden by the defendant prior to his arrest still being there.

49. Additionally, because the Target Vehicle is in the exclusive possession of the FBI this warrant seeks authorization to conduct the search any time day or night. The typical concerns associated with "after-hours" warrants are not present in this case in any degree, and such authorization will provide additional flexibility for the searching agents to allocate the resources necessary for the search and complete it expeditiously.

50. I, Bryan Huot, a FBI Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

<u>s/Bryan Huot</u><br>
Bryan Huot, Special Agent<br>
Federal Bureau of Investigation

Submitted, attested to, and acknowledged by reliable electronic means on September __16__, 2024.

_____
HON. MICHAEL E. HEGARTY
CHIEF UNITED STATES MAGISTRATE
JUDGE, DISTRICT OF COLORADO

**This Application and Affidavit was reviewed and submitted by Assistant United States Attorney Daniel R. McIntyre.**

15